UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

KAREN SCHLACTER,          )     Case No.  1:08CV617
                        )
          Plaintiff,      )     MAGISTRATE JUDGE
                        )     GEORGE J. LIMBERT
     v.                 )
                        )
MICHAEL J. ASTRUE,      )     <u>MEMORANDUM OPINION & ORDER</u>
COMMISSIONER OF         )
SOCIAL SECURITY,        )
                        )
          Defendant.    )

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB").  ECF Dkt. #1.  Plaintiff asserts that the Administrative Law Judge ("ALJ") erred in his decision by: failing to find that her chronic fatigue syndrome ("CFS") and depression/anxiety were not severe impairments; failing to give her treating physicians' opinions controlling or substantial weight; failing to call a medical expert at the hearing; and improperly determining her credibility.  For the following reasons, the Court affirms the ALJ's decision and dismisses Plaintiff's complaint in its entirety with prejudice.

## I.    <u>PROCEDURAL HISTORY</u>

Plaintiff filed an application for DIB on March 26, 2003, alleging disability beginning June 1, 2001 due to fibromyalgia, CFS, depression, anxiety, back problems with muscle spasms, and "high Epstein-Barr" levels. Tr. at 63-65, 80.  The Social Security Administration ("SSA") denied Plaintiff's

application initially and upon reconsideration.  *Id*. at 35-42.  Plaintiff requested a hearing before an ALJ which was held on April 10, 2006.  *Id*. at 43, 321.

On October 27, 2006, the ALJ found that Plaintiff had the severe impairments of disorders of the back and an affective disorder.  Tr. at 323.  However, the ALJ found that this impairment did not meet or equal a listed impairment in 20 C.F.R. Part 4, Subpart P, Appendix 1.  *Id.*  The ALJ also noted that although Plaintiff alleged disabling fibromyalgia since June 1, 2001, no medical records existed in the file covering that period.  *Id.* The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work that involved simple repetitive tasks.  *Id*. at 325.  The ALJ further found that while Plaintiff could not return to her past relevant work as a flower preservationist, she could perform jobs existing in significant numbers in the national economy based upon the vocational expert's ("VE") testimony.  *Id*. at 328.

Plaintiff appealed the ALJ's October 27, 2006 decision to the Appeals Council, but the Appeals Council denied her request for review. Tr. at 317, 333.  The ALJ's decision therefore became the final decision of the Commissioner and Plaintiff appealed that decision to this Court on March 11, 2008.  ECF Dkt. #1.  The parties consented to the jurisdiction of the undersigned on May 1, 2008. ECF Dkt. #9.

On June 4, 2008, Defendant filed a motion to remand the instant case pursuant to sentence six of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) for further administrative action. ECF Dkt. #10.  Defendant explained in his memorandum in support of the motion to remand that the tape recording of Plaintiff's administrative hearing could not be located.  ECF Dkt. #10-1.  On June 20, 2008, the Court granted Defendant's motion to remand and ordered Defendant to either locate a copy of the missing tape by August 20, 2008, or inform the Court of his inability to locate the tape.

ECF Dkt. #14.

On August 20, 2008, Defendant filed a notice informing the Court that he was unable to locate the recording of Plaintiff's administrative hearing. ECF Dkt. #15. Defendant therefore requested that the Court remand the case for a de novo hearing before the SSA. *Id*. On August 26, 2008, the Court remanded the instant case for a de novo hearing before the SSA pursuant to the sixth sentence of Section 205(g) of the Social Security Act. ECF Dkt. #16.

On April 22, 2011, Defendant filed a motion to reopen the instant case indicating that the ALJ held a de novo hearing and issued an unfavorable decision in Plaintiff's case on April 14, 2009. ECF Dkt. #17. The Court granted Defendant's motion to reopen the case and Defendant subsequently filed an answer to Plaintiff's complaint. ECF Dkt. #19. On May 11, 2011, the Court issued its initial order setting deadlines in the case and after the transcript of proceedings was filed and five extensions of time granted to file her brief, Plaintiff filed her brief on the merits on October 12, 2011. ECF Dkt. #27. On January 27, 2012, after two extensions of time, Defendant filed his brief on the merits. ECF Dkt. #30. On February 17, 2012, Plaintiff filed her reply brief. ECF Dkt. #33.

**II**.        **RELEVANT PORTIONS OF THE ALJ'S DECISION**

On April 14, 2009, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act on June 30, 2001. Tr. at 17. The ALJ found that Plaintiff did not engage in substantial gainful activity during the period between her alleged onset date of June 1, 2001 through her date last insured of June 30, 2001. *Id*. He found that Plaintiff had the severe impairment of fibromyalgia. *Id.* He further found that this impairment did not meet or equal a listed impairment in 20 C.F.R. Part 4, Subpart P, Appendix 1 ("The Listings"). *Id.* at 19. The ALJ also discounted Plaintiff's credibility and found that she had the RFC to perform the full range of sedentary work. *Id.* The ALJ further found that Plaintiff could return to her past relevant work as an inside sales person

-3-

and thus was not disabled.  *Id*. at 21.

### III.      STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB.

These steps are:

1.      An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (§§20 C.F.R. 404.1520(b) and 416.920(b) (1992));

2.      An individual who does not have a "severe impairment" will not be found to be "disabled" (§§20 C.F.R.  404.1520(c) and 416.920(c) (1992));

3.      If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see §§20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (§§20 C.F.R.  404.1520(d) and 416.920(d) (1992));

4.      If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (§§20 C.F.R. 404.1520(e) and 416.920(e) (1992));

5.      If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (§§20 C.F.R. 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).   The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work experience and RFC.  *See Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV.      STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited in scope by § 205 of the Social Security Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported

by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  Therefore, this Court is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).  The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532.  Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V.   ANALYSIS

### A.   ALJ'S STEP TWO DETERMINATION

Plaintiff first asserts that the ALJ erred by failing to find that her CFS and depression/anxiety were severe impairments at Step Two of the sequential steps for evaluating entitlement to social security benefits.  ECF Dkt. #27 at 9.

At Step Two, the ALJ determines whether a claimant's impairments are severe and whether they meet the twelve-month durational requirement.  20 C.F.R. § 404.1520(a).  At this Step, the claimant bears the burden of proving the threshold requirement of a "severe impairment." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  The claimant must show that she suffered from medically severe impairments that lasted or could be expected to last for a continuous period of at least twelve months. *Id.*  The Court must apply a de minimis standard in determining severity at Step Two. *Higgs*, 880 F.2d at 862.  An impairment or combination of impairments is not severe  "...if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §

-5-

404.1521(a).  The types of "basic work activities" that qualify for use in the regulations are described in 20 C.F.R. §404.1521(b).  An impairment can be found non-severe only if it could constitute "a slight abnormality which has such a minimal effect on the individual that it could not be expected to interfere with an individual's ability to work, irrespective of age, education and past work experience." *Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 89-90 (6th Cir. 1985).  An "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [claimant's] statement of symptoms." 20 C.F.R. § 404.1508.

The ALJ found at Step Two that Plaintiff's allegation of CFS was not a medically determinable impairment.  Tr. at 18.  Plaintiff asserts that the record does not support the ALJ's findings that evidence was lacking of a CFS diagnosis as of June 2001 or that objective findings were lacking to support CFS as a condition separate from fibromyalgia as of Plaintiff's date last insured.  *Id.* at 18.  ECF Dkt. #27 at 10.  Plaintiff points to the findings of board-certified rheumatologist Dr. Taylor on April 11, 1992 that she had the classic symptoms of fibromyalgia.  *Id.* at 10, citing Tr. at 157.  Plaintiff further cites to Dr. Taylor's notes indicating that she was experiencing poor ability to sleep and fatigue, as well as the classic signs of fibromyalgia until December 9, 1992 when she stopped treating with him for a period of time.  ECF Dkt. #27 at 11, citing Tr. at 156-158.  Plaintiff further cites to the notes of her primary care physician, Dr. Thomas, who noted that Plaintiff had swollen glands and a low grade fever, as well as chronic fatigue.  ECF Dkt. #27 at 11, citing Tr. at 150.  Finally, Plaintiff points to Dr. Thomas' June 15, 1995 progress notes which set forth a diagnosis of CFS, a positive Epstein-Barr result, and "other signs and symptoms of CFS."  *Id.*

-6-

Plaintiff fails to meet her burden at Step Two and substantial evidence supports the ALJ's Step Two determination as to CFS.  The ALJ correctly noted that CFS can be intertwined with fibromyalgia.  *Id.*  In fact, while he did not mention it, Social Security Ruling 99-2p addresses CFS and explains that the symptoms of CFS and fibromyalgia can overlap:

> There is considerable overlap of symptoms between CFS and Fibromyalgia Syndrome (FMS), but individuals with CFS who have tender points have a medically determinable impairment. Individuals with impairments that fulfill the American College of Rheumatology criteria for FMS (which includes a minimum number of tender points) may also fulfill the criteria for CFS. However, individuals with CFS who do not have the specified number of tender points to establish FMS, will still be found to have a medically determinable impairment.

SSR 99–2p, n. 3.

Substantial evidence supports the ALJ's determination that the record lacked evidence of a CFS diagnosis as of June 2001, the period of time between Plaintiff's onset date and her date last insured of June 30, 2001, and his determination that objective findings did not support CFS as a separate condition during that time.  *Id.*  Plaintiff's references to Dr. Taylor's 1992 progress notes well precede her onset date and date last insured and support her fibromyalgia impairment, the only impairment that the ALJ found to be severe at Step Two.  Tr. at 157.  On November 11, 1992, Dr. Taylor noted Plaintiff's complaints, which included fatigue and painful knees and legs, and he diagnosed her with classic fibromyalgia symptoms, psoriasis, cigarette abuse, and depression.  *Id.* Plaintiff's citations to Dr. Taylor's other progress notes indicating that she was experiencing poor ability to sleep and fatigue, also fail to establish CFS as medically determinable or as a severe impairment. Dr. Taylor's December 9, 1992 note indicated that Plaintiff was having less pain and was sleeping better.  *Id.* at 156.  Plaintiff stopped treating with Dr. Taylor for a long period of time thereafter, but even considering his next treatment note of March 14, 2002, Dr. Taylor again

-7-

diagnosed fibromyalgia, but also added fibromyalgia "w/fatigue 2° to excessive expectations.  Admits can't say "no." *Id*. at 156.  Further, Dr. Thomas' June 15, 1995 note cited by Plaintiff states "chronic fatigue" and does not contain a diagnosis of CFS, but rather appears to be a statement that Plaintiff was reporting having longstanding fatigue. *Id*. at 150.  Dr. Thomas did report a positive Epstein-Barr test result of "EBV - (+) 1:80", and other signs and symptoms, but no actual diagnosis of CFS was made and he failed to attach the actual "laboratory findings" to his notes. *Id*.  Moreover, Dr. Gross treated Plaintiff after her date last insured and suggested a "possible chronic fatigue diagnosis" on April 23, 2003 along with fibromyalgia, but this diagnosis was not definitive and was made well after Plaintiff's date last insured.

While CFS is an elusive condition, much like fibromyalgia, the Court's job is to determine whether the ALJ applied the proper legal standards and whether substantial evidence supports his determination.  Based upon the review of the record evidence, even that well preceding the onset date and subsequent to Plaintiff's date last insured, the Court finds that the ALJ did not err in his Step Two determination.  While the records establish that Plaintiff has fatigue, the ALJ had substantial evidence to find that Plaintiff did not have the medically determinable severe impairment of CFS prior to her date last insured separate from her fibromyalgia.

The Court finds the same with regard to the ALJ's determination that Plaintiff's depression/anxiety were not severe impairments during the relevant time period.  Tr. at 18.  Again, the ALJ reviewed evidence both before and after the relevant time periods in this case. *Id*.  He noted that the record contained no evidence of psychiatric or psychological treatment by Plaintiff for her mental conditions during the relevant time period or well before, and he cited to notes indicating that Plaintiff was only "slightly depressed" in 2002 and sought counseling mainly for marital problems

-8-

during that time.  *Id*.  Moreover, the ALJ proceeded through the evaluation for mental disorders criteria under Section 12.00C of the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing") and addressed Plaintiff's four broad functional areas and adequately explained his finding that her depression and anxiety were nonsevere.  *Id*.  Medical records well preceding Plaintiff's onset date show that she had been on medication for her depression and anxiety through her treating physicians.  Tr. at 159.  She was diagnosed with depression and anxiety in 1996 by her primary care physician.  *Id*. at 149.  However, the mere diagnosis of an impairment does not prove its severity or disability.  *Higgs*, 880 F.2d at 863.  The ALJ correctly found that the record lacked evidence that Plaintiff sought psychiatric or psychological treatment during the relevant time period as Plaintiff received medication for her conditions from her primary care physicians.  *Id*. at 18, 135, 138, 141, 149, 150, 159.   As to the treatment Plaintiff received following her date last insured, the ALJ reviewed the treatment notes in his Listing 12.00C evaluation, indicating that notes from her mental health provider showed that Plaintiff had reported that she was overworking herself, she interacted less with others mainly due to her fatigue and not her psychological symptoms, her concentration, persistence and pace were found to be "OK," and any limitation in concentration was caused by fatigue and not her mental condition.  Tr. at 18, citing Tr. at 162-179.  Accordingly, the ALJ reasonably found that Plaintiff's depression and anxiety were not severe impairments at Step Two.

Moreover, "when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at Step Two 'does not constitute reversible error.'"  *Fisk v. Astrue*, 253 Fed. Appx. 580, 583 (6th Cir.2007), quoting *Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  Here, the ALJ went

on to consider Plaintiff's fatigue, although not as the actual impairment of CFS.  He reviewed her minimal complaints of fatigue as of June 2001, the fact that her fibromyalgia was once assessed as being secondary to her excessive expectations and her inability to say no to responsibilities, the lack of reports to her medical providers of excessive sleeping, a report to a provider that she had danced too much one night, and the fact that she ran a home based business since 1999. Tr. at 21.

For these reasons, the Court finds that the ALJ applied the proper legal standards and substantial evidence supports his Step Two determination.

Plaintiff also asserts that the ALJ's alleged errors at Step Two prejudiced her because his Step Three analysis would therefore be flawed because it failed to include and consider the limitations caused by Plaintiff's CFS and depression and anxiety.  ECF Dkt. #27 at 13.  The Court finds no merit to this assertion.  The Court has found no errors in the ALJ's analysis at Step Two.  Moreover, upon making his findings in Step Two, the ALJ proceeded to evaluate Plaintiff's mental impairment at Step Three as he noted that his review of the severity of mental impairments at Steps Two and Three of the sequential process are guided by the "paragraph B" criteria of Listing 12.00C of the Listing of Impairments. Tr. at 18.  In addition, the ALJ specifically stated in his Step Three determination that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled" the Listings.  *Id*. at 19.  "An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings." *Loy v. Sec'y of Health and Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990), quoting *Gooch v. Sec'y of Health and Human Servs.,* 833 F.2d at 592 (6th Cir.1987), *cert. denied*, 484 U.S. 1075, 108 S.Ct. 1050, 98 L.Ed.2d 1012 (1988); *see also Frock v. Astrue*, No. 3:09CV0499, 2011 WL 711092, at *10 (S.D. Ohio

Jan. 14, 2011)(ALJ considered impact of all impairments in combination by finding that claimant "'does not have an impairment or *combination of impairments'* that meets or equals the severity of a listing-level impairment" and showing that he considered medical evidence of record regarding Plaintiff's multiple impairments (both physical and mental) and Plaintiff's testimony during the hearing.).

Accordingly, Plaintiff was not prejudiced at Step Three of the ALJ's analysis.

**B**.     **TREATING PHYSICIAN OPINIONS**

Plaintiff also asserts that the ALJ erred in failing to give controlling weight to the retrospective

opinions of her treating physicians Drs. Gross, Diab and Poyle. ECF Dkt. #27 at 14-17.

An ALJ must give controlling weight to the opinion of a treating physician if the ALJ finds that the opinion on the nature and severity of an impairment is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). In other words, an ALJ must give a treating physician's opinion controlling weight only if the opinion relies on objective medical findings, *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985), and substantial evidence does not contradict it, *Hardaway v. Sec'y of Health and Human Servs*., 823 F.2d 922, 927 (6th Cir.1987). If the ALJ finds the treating physician's opinion fails to meet these two conditions, he may discredit the opinion as long as he articulates a reasoned basis for doing so. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir.1987). "When deciding if a physician's opinion is consistent with the record, the ALJ may consider evidence such as the claimant's credibility, whether or not the findings are supported by objective medical evidence, as well as the opinions of every other physician of

-11-

record." *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. App'x 435, 442, 2010 WL 3199693, at **6  (6th

Cir. Aug. 12, 2010), unpublished, citing SSR 96-5p, 1996 WL 374183, at *3 (S.S.A. July 2, 1996);

SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996); *Hickey-Haynes v. Barnhart*, 116 Fed.Appx.

718, 726 (6th Cir.2004) (An ALJ may "consider all of the medical and nonmedical

evidence.")(quotation marks and citation omitted)).

   If an ALJ does not give controlling weight to the opinions of a treating physician, the ALJ

must apply the factors in 20 C.F.R. § 404.527(d)(2)(i), (d)(2)(ii), (d)(3) through (d)(6) [20 C.F.R. §

416.927(d)(2) (i), (d)(2)(ii), (d)(3) through (d)(6) for SSI] which include the length of the treatment

relationship, the frequency of the examinations, the nature and extent of the treatment relationship,

the supportability of the opinions with medical signs, laboratory findings, and detailed explanations,

consistency of the opinions with the record as a whole, the specialty of the treating physician, and

other factors such as the physician's understanding of social security disability programs, and

familiarity of the physician with other information in the claimant's case record.  20 C.F.R. §§

404.1527(d)(2), 416.927(d)(2).

   If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good

reasons" for doing so.  SSR 96-2p.  The ALJ must provide reasons that are "sufficiently specific to

make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight." *Id.*  This allows a claimant to understand how her

case is determined, especially when she knows that her treating physician has deemed her disabled

and she may therefore " 'be bewildered when told by an administrative bureaucracy that [s]he is not,

unless some reason for the agency's decision is supplied.' " *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d

541, 544 (6th Cir. 2004), quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2nd Cir.1999).  Further, it "ensures

-12-

that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.*  If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir. 2007), citing *Wilson*, 378 F.3d at 544.

Plaintiff in this case concedes that the ALJ did address the retrospective opinions of Drs. Gross, Diab and Poyle, but she asserts that he "very cursorily rejected them." ECF Dkt. #27 at 16. She contends that the ALJ's reasons for rejecting the opinions were not good reasons as required by the Social Security regulations and rules.  *Id.*  The Court finds no merit to Plaintiff's assertions.

Dr. Gross began treating Plaintiff on January 21, 2003 for her complaints of fatigue.  Tr. at 404.  Dr. Gross noted that Plaintiff had reported experiencing fatigue for the past year.  *Id.*  On May 23, 2003, Dr. Gross completed a report indicating Plaintiff's diagnoses as depression/anxiety, fibromyalgia, extreme fatigue, and restless leg syndrome.  *Id.* at 184.  She noted that Plaintiff was diagnosed with extreme fatigue in June 2001, fibromyalgia in 1992, depression/anxiety in 1991, and restless leg syndrome in 1998.  *Id.*  Dr. Gross outlined her clinical findings as to Plaintiff's conditions by documenting her May 23, 2003 clinical examination of Plaintiff.  *Id.*; *see also* Tr. at 215.  Dr. Gross opined the following about Plaintiff in her May 23, 2003 assessment:

> Patient suffers from muscle pains in arms and legs also back pain and headache.  Feels achy and tired all the time.  Needs to take at least 2 naps during the day (2-4 hours each) to be able to perform basic activities.  Noted significantly decreased concentration ability, memory deficits which interfere with everyday life.

*Id.* at 185.

On January 10, 2006, Dr. Gross completed another RFC form, this time relating solely to Plaintiff's fibromyalgia.  Tr. at 311.  The form contained the typewritten indication that it was for Plaintiff's condition "Prior to 6/30/01 and Continuing."  *Id.*  Dr. Gross noted that she had referred Plaintiff to a rheumatologist.  *Id.*  She indicated Plaintiff's prognosis as "fair" and found that Plaintiff

-13-

had the tender points associated with fibromyalgia upon clinical examination. *Id.* She further noted that she "never received records from patient's previous physician." *Id.* She described Plaintiff's symptoms, opined that Plaintiff was not a malingerer, and reported that her pain range varied from 3/10 to 7/10 depending upon the day, and she reported experiencing pain of some sort everyday. *Id.* at 312. Dr. Gross found that Plaintiff's pain was severe enough to frequently interfere with attention and concentration and that she was incapable of even low stress work because she felt "too tired to do any tasks, even everyday housework." *Id.* She opined that Plaintiff could not walk a city block without severe pain or rest, she could continuously sit for only one hour at a time, sit, stand and/or walk less than two hours, and she must walk around every thirty minutes for at least twenty minutes at a time. *Id.* at 313. She opined that Plaintiff did not need a job with a sit/stand option, but would need to take unscheduled breaks to lie down at least eight times per day for 1.5 hours before returning to work. *Id.* at 314. She found that Plaintiff could never lift any weight, had significant limitations in repetitive reaching, handling or fingering, and could not stoop or crouch. *Id.* at 314-315. Finally, Dr. Gross opined in a March 28, 2006 updated note on the form that Plaintiff had no "good days and is unable to work." *Id.* at 315.

On February 23, 2009, Dr. Diab, Plaintiff's treating rheumatologist who began treating her on February 10, 2006, completed a fibromyalgia RFC form. Tr. at 407. The form contained the typewritten indication that it was for the time period prior to June 1, 2001 through the present. *Id.* Dr. Diab listed Plaintiff's symptoms and signs which established a fibromyalgia diagnosis and he opined that her pain was severe enough to frequently interfere with attention and concentration, to require an at-will sit/stand option, and to require her to take unscheduled breaks every one to two hours for at least one hour to rest and lie down. *Id.* at 407-408. He found that she could frequently lift up to five pounds and occasionally lift up to ten pounds, work two hours per day, stand fifteen minutes at a time and stand/walk 1 hour per workday, sit thirty minutes at a time up to two hours per

workday, never stoop, occasionally lie down during the workday, and occasionally raise her arms over should level. *Id.* at 408. He opined that Plaintiff had good and bad days and would be absent from work more than four times per month. *Id.* He further found that Plaintiff was incapable of even low stress tasks and her medications may interfere with her ability to operate machinery and to concentrate. *Id.*       On March 3, 2009, Dr. Poyle, Plaintiff's chiropractor, wrote a letter to Plaintiff's attorney indicating that he had treated Plaintiff over the last six years. Tr. at 426. He reported that Plaintiff had a history of fibromyalgia, chronic fatigue syndrome, psoriatic arthritis, migraines, cervical/thoracic/lumbar pain, bilateral arthritis, and upper extremity pain/tightness with periodic tingling and numbness. *Id*. He described the numerous therapies used to help Plaintiff, but indicated that while Plaintiff experienced some relief, she usually regressed and had flare-ups of her conditions. *Id.* Dr. Poyle further stated that due to fatigue, Plaintiff has been unable to maintain consistent exercise due to her flare-ups. *Id*. He further stated that "[d]ue to the patient's severity of complaint I do not feel she is able to do the full range of sedentary work." *Id*.

The ALJ reviewed Dr. Gross' progress notes and her opinions. In determining that Dr. Gross' opinions were entitled to "less weight," the ALJ found that Dr. Gross did not begin treating Plaintiff until 2003 and did not render her opinions until 2003 and 2006, well after Plaintiff's onset date and her date last insured of June 30, 2001. Tr. at 21. The ALJ found the same with regard to Dr. Diab's opinion as his opinion was rendered in 2009 and his treatment of Plaintiff began in 2006, nearly five years after Plaintiff's date last insured. *Id.* The ALJ also noted that Dr. Poyle began treating Plaintiff well after her date last insured and rendered his opinion in 2009. *Id*.

The Sixth Circuit has held that a treating physician's opinion, based on a treatment record that began eight months after the date last insured, was not entitled to substantial weight. *Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987) (per curiam). In *Renfro v. Barnhart*, the Sixth Circuit found that a treating physician's opinion as to a claimant's RFC was not entitled to

controlling weight where the treating physician was the claimant's treating physician only after her date last insured and reports from other treating physicians during the relevant time period did not indicate that she was as functionally limited as that found after that date.  No. 00-4457, 30 Fed. Appx. 431, 2002 WL 252438, at **6 (6th Cir. Feb. 19, 2002), unpublished.  Additional cases support the holding that evidence issued after a date last insured generally lacks probative value.  *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988) (tests from 1981 and 1983 were "minimally probative" of claimant's condition in 1979); *Liebisch v. Sec'y of Health & Human Svcs.*, 1994 WL 108957, *2 (6th Cir. Mar.30, 1994)(1990 report was "necessarily less accurate" about claimant's condition from 1985-89 than it was about her status in 1990); *Weetman v. Sullivan*, 877 F.2d 20, 22 (6th Cir.1989) (deterioration in the claimant's condition after the period of eligibility is irrelevant).

Dr. Gross' 2006 opinion was completed on a typewritten form captioned "Fibromyalgia Residual Functional Capacity" with the typewritten phrase "Condition Prior to 6/30/01 and Continuing" immediately underneath it.  Tr. at 311.  Dr. Gross provides no other indication that her opinion applied to Plaintiff's conditions as they existed more than two years before she first treated Plaintiff.  *Id*.  In fact, Dr. Gross stated on that form that she "never received records from patient's previous physician."  *Id*.  She also made an update to this opinion on March 28, 2006 indicating that "Ms. Schlacter does not have any good days and is unable to work."  *Id.* at 315.  Dr. Diab completed his 2009 opinion on a typewritten form which stated "Based upon your knowledge and personal observation of the claimant, please provide your answers to the following for the time period prior to 6/1/01 through the present."  Tr. at 407.  Aside from this typewritten phrase, Dr. Diab's opinion contains no other indication evidencing that he based his findings and opinion on Plaintiff's conditions as they existed prior to June 1, 2001, more than five years prior to his first treatment of her, or how he could have made such observations prior to his treatment of Plaintiff.  Dr. Poyle's 2009 opinion contains no assertion whatsoever that it has any retrospective application.  *Id.* at 426.

The ALJ did not ignore these opinions, but he reasonably attributed them little weight because of the lapse of time between Plaintiff's date last insured and the rendering of treatment by the doctors and the issuance of their opinions.  Tr. at 21.  Drs. Gross, Diab and Poyle did not begin treating Plaintiff and did not issue their opinions until well after her date last insured.  They therefore lacked firsthand knowledge of Plaintiff's condition prior to her date last insured.  *See Clendening v. Astrue*, No. 5:09CV2111, 2011 WL 1130448, at *5 (N.D. Ohio Mar. 28, 2011)(ALJ justified in rejecting opinions of treating physicians who opined that claimant was totally disabled since the 1990's since they lacked firsthand knowledge of his condition prior to date last insured and medical records contradicted their opinions).

In addition to the great time lapse between Plaintiff's date last insured and the doctors' treatment and opinions, the ALJ also cited to other evidence in the record which was inconsistent with the doctors' opinions.  The ALJ cited to Plaintiff's prior treating physician Dr. Taylor, who issued his opinion on May 22, 2003 and indicated that he first treated Plaintiff on November 11, 1992 and December 9, 1992 and last saw her on March 14, 2002 and March 31, 2003.  Tr. at 180-181.  Dr. Taylor diagnosed Plaintiff with fibromyalgia and cigarette abuse, and he indicated that Plaintiff had the tender points associated with fibromyalgia upon examination on November 11, 1992 and March 14, 2002.  *Id*. at 181.  However, in the part of the form requesting that the doctor describe any limitations in work-related abilities, Dr. Taylor wrote:

> Per patient: states has to take "two lengthy naps per day" 8:30 a x 2-4 hrs. 3 pm →
> 5:30 or 6pm
>
> no impairment in sitting, standing, walking, bending, stooping, lifting, grasping.  Able to communicate w/o difficulty and follow instructions; able to do self-care.

*Id*. at 182.  The ALJ also reviewed Plaintiff's complaints to her medical providers and the evidence of record that discounted her credibility regarding the persistence and intensity of her fatigue and pain.  *Id*. at 20.  He cited to Plaintiff's minimal complaints of fatigue when she sought medical treatment.

-17-

*Id.* He noted that Plaintiff never reported that she slept up to twenty hours per day, but rather she indicated that she took two to three-hour long naps. *Id.* The ALJ noted that Plaintiff's fibromyalgia with fatigue was assessed by Dr. Taylor to be secondary to her excessive expectations as she was unable to say "no" to responsibilities. *Id.*, citing Tr. at 156. Dr. Taylor had advised Plaintiff to cut back, prioritize, say "no" and relax. *Id.* The ALJ also noted that Dr. Taylor's medical records showed no treatment for Plaintiff from 1992 through 2002. *Id.*

In addition, the ALJ provided additional reasons for attributing less than controlling weight to the opinions of Drs. Gross and Poyle. As to Dr. Gross, the ALJ indicated that her 2003 opinion was based upon limited treatment of Plaintiff at that time since Dr. Gross had only treated Plaintiff from January 2003 to May 2003 before making her opinion. Tr. at 21. The ALJ also indicated that he gave less weight to Dr. Poyle's opinion because he cited to Plaintiff's fatigue as a reason for his conclusions, but he did not treat her for fatigue. *Id.* The ALJ attributed more weight to the opinion of Dr. Taylor, who had treated Plaintiff a few times during the relevant time period and shortly thereafter and concluded after her date last insured that Plaintiff had no physical limitations despite a diagnosis of fibromyalgia. *Id.*

While the ALJ could have provided more analysis and explanation, the Court finds that the ALJ properly applied the treating physician rule and articulated sufficient good reasons for giving less than controlling weight to the opinions of Drs. Gross, Diab and Poyle. Substantial evidence also supports his findings.

### C.     **MEDICAL EXPERT**

Plaintiff asserts that the ALJ violated Social Security Ruling 83-20 ("SSR 83-20") by failing to call a medical expert ("ME") to evaluate Plaintiff's claim. ECF Dkt. #27 at 17. Plaintiff contends that the severity of her fibromyalgia, CFS and depression/anxiety could only be recognized in the course of the treatment that she received following her date last insured and therefore it was necessary

for the ALJ to call a ME.  *Id*.

The Court rejects Plaintiff's assertion. Plaintiff repeats many of the arguments presented in her prior assertions which this Court has already rejected.  Further, "SSR 83-20 recognizes that an ALJ should call on the services of a medical expert when he has to infer the onset date of disability. However, SSR 83-20 contemplates calling a medical expert when 'there is no development of the medical record on which the ALJ can rely to ascertain onset.'" *Slack v. Astrue*, No. 1:08CV2380, 2010 WL 420022, at *3 (N.D. Ohio Jan. 29, 2010), quoting *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir.2006).  The ALJ in this case did not have to infer the onset date of disability. Plaintiff's counsel agreed with the ALJ at the hearing that Plaintiff's onset date was June 1, 2001 and her date last insured was June 30, 2001.  Tr. at 431-432.  Further, the ALJ considered both the medical evidence preceding Plaintiff's onset date and postdating her date last insured since very little treatment occurred near that date.  The primary function of a ME is to explain the medical terms and findings in complex cases in terms that the ALJ, who is not a medical professional, may understand. *Richardson v. Perales*, 402 U.S. 389, 408, 91 S.Ct. 1420 (1972).  The decision to call a ME is generally within the ALJ's discretion.  *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).  The Court may overturn the ALJ's decision only if it appears that using a ME was "necessary-rather than simply helpful-in order to allow the ALJ to make a proper decision." *Young v. Comm'r of Soc. Sec.*, No. 2:10CV960, 2011 WL 2923695, at *6, citing *Landsaw*, 803 F.2d at 214, quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977).  The Court finds that using a ME in this case was not necessary as the ALJ analyzed the record, both predating her onset date and postdating her date last insured, articulated his reasons for the weight given to her treating physicians, and had substantial evidence to support his findings.

### D.    CREDIBILITY

Finally, Plaintiff asserts that the ALJ   improperly determined her credibility, especially in light

of her fibromyalgia diagnosis.  ECF Dkt. #27 at 20.  Plaintiff contends that the ALJ only selectively mentioned a few of her activities and failed to consider the factors outlined in Social Security Ruling 97-7p ("SSR 96-7p").  *Id.* at 21.  She cites *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007) in support of her assertion.

The Court notes that fibromyalgia cases present challenging issues as to determining credibility, RFC and disability in the social security context.  The Sixth Circuit has recognized that "disability claims related to fibromyalgia are related to the symptoms associated with the condition—including complaints of pain, stiffness, fatigue, and inability to concentrate—rather than the underlying condition itself." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed .App'x 852, at **10 (6th Cir. Jan. 7, 2011), citing *Rogers*, 486 F.3d at 247 (other citations omitted).  The Social Security Regulations establish a two-step process for evaluating pain.  *See* 20 C.F.R. § 404.1529.  In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain.  *See id.; Stanley v. Sec'y of Health and Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).  Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms.  *See id.*  Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities.  *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in SSR 96–7p. *See* SSR 96–7p. These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40. Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey*, 987 F.2d at 1234.

Here, the ALJ addressed the first prong of the two-step process for evaluating Plaintiff's credibility and found that her medically determinable impairment could reasonable be expected to cause her symptoms.  Tr. at 20.  However, he discounted her complaints of disabling pain and symptoms.  *Id.*  In doing so, the ALJ cited to the proper regulations and Social Security Rulings, including SSR 96-7p.  *Id*. at 19.  The Court finds that the ALJ properly applied the regulations and Rulings and substantial evidence supports his credibility determination.

Contrary to Plaintiff's assertion, SSR 96-7p does not require the ALJ to analyze and elaborate on each of the listed factors in his decision when he makes a credibility determination. *Emrick v. Comm'r of Soc. Sec*., 2010 WL 503113, at *5 (S.D. Ohio Feb. 8, 2010), citing *Patterson v. Barnhart*, 428 F.Supp.2d 869, 880 (E.D.Wis.2006).  However, "the ALJ must sufficiently articulate his assessment of the evidence both to assure the court that he considered the important evidence and to enable the court to trace the path of his reasoning."  *Id*.  SSR 96-7p also requires the ALJ to provide "specific reasons for the finding on credibility, supported by the evidence in the case record." *Id.*,

-21-

citing SSR 96-7p.

The ALJ fulfilled his obligations in this case.  He considered Plaintiff's treatment, citing to both her pre-onset date treatment and post-date last insured treatment.  Tr. at 20.  He cited to Plaintiff's testimony and reports to medical sources regarding the location, duration, frequency and intensity of her pain by recounting her testimony and the medical records showing her complaints of fatigue, hip and leg complaints.  *Id.*  He noted that while Plaintiff reported that her fatigue worsened from 1999 to 2001 and she was sleeping up to twenty hours per day, she never reported to a medical professional that she was sleeping that amount of time.  *Id.* at 19-20.  He noted Plaintiff's lack of medical treatment during the relevant time period.  *Id.*  The ALJ gave some weight to the opinion of Dr. Taylor, the only treating physician in the record who treated Plaintiff prior to her onset date and issued his opinion close in time to the time period in question.  *Id.* at 180-181.  The ALJ noted that Dr. Taylor had diagnosed Plaintiff with fibromyalgia and stated in his March 14, 2002 progress note indicated that her fibromyalgia with fatigue may be secondary to her excessive expectations as she was unable to say "no" to responsibilities.  *Id.*, citing Tr. at 156.  Dr. Taylor noted that he had a long discussion with Plaintiff about saying "no," and about prioritizing and relaxing.  *Id.*  This belies Plaintiff's assertion that she was disabled by her pain and fatigue.  The ALJ also noted that Dr. Taylor's medical records showed no treatment for Plaintiff from 1992 through 2002.  *Id.* at 20. Moreover, the ALJ noted that Dr. Taylor had not set forth any physical limitations in his opinion.  Tr. at 20.  In describing any limitations in work-related abilities, Dr. Taylor found that Plaintiff had no impairment in sitting, standing, walking, bending, stooping, lifting, and grasping and that she was able to communicate and follow instructions.  *Id.* at 182.  Dr. Taylor did note that Plaintiff had informed him that she needed to take two lengthy naps per day for about two hours.  *Id.* However, he listed no physical limitations as a result of her diagnoses at that time.

For these reasons, the Court finds that the ALJ conducted the proper analysis of Plaintiff's

-22-

credibility and substantial evidence supports his determination.

**VI**.    **CONCLUSION**

For the foregoing reasons, the Court affirms the ALJ's decision and dismisses Plaintiff's complaint in its entirety with prejudice.

Dated: February 21, 2012                                    */s/ George J. Limbert*
                                                          GEORGE J. LIMBERT
                                                          UNITED STATES MAGISTRATE JUDGE